PARDEE, Circuit Judge,
after stating the case, delivered the opinion of the court.
William Little and Maria F. Little, his wife, in 1887 owned several parcels of different surveys or tracts of land, containing in all 315 acres, the several parcels lying contiguous to each other, with the exception of one timbered tract about four miles distant. They actually resided upon one of the parcels containing 42 acres, nut were cultivating the remainder, except the timbered tract, which was used for timber and fuel supply. Considering the uses of the various parcels, they had a right, in connection with the 42-acre parcel, on which they actually resided, to select any of the other tracts (to an acreage not exceeding 200) as a homestead, the same to be exempt from forced seizure and sale, except as permitted by the constitution of the state. After selecting and designating the homestead, they had a right to deal with the other parcels and portions of their lands not selected as one ordinarily deals with his own. Under these circumstances, and in view of these rights, they applied to the Watkins Land & Mortgage Company for a loan of money, offering as security to mortgage a part of the lands in question, and by sworn representations that their, homestead, upon which they resided, consisted of about 200 acres, and formed no part of the property proposed to be mortgaged, distinctly asserting that the lands which they proposed to mortgage constituted no part or parcel of their homestead, obtained a loan of a large sum of money, and secured the same by a mortgage upon the lands so as aforesaid sworn not to constitute a part of the homestead upon which they resided, and which lands so mortgaged did not necessarily constitute a part of the homestead unless they so at the time willed. The present contention is that the sworn representations upon which the loan was made in good faith must be disregarded, and that now the wife, Maria F. Little, her husband being dead, be held entitled to have set apart to her as a homestead a large part of the land so as aforesaid mortgaged, because, at the time of *327 the mortgage, the Littles, husband and wife, actually resided upon those lands. As a matter of fact, at the time of the mortgage, the Littles no more resided upon the lands mortgaged than they did upon every other part or portion of the 315 acres owned by them, except, of course, the 42-acre parcel upon which they did actually reside. The homestead question eliminated, the above representations made by Little and wife would estop them from claiming, in law or in equity, any interest in the mortgaged lands prior in right to the title acquired under the mortgage; and this is too well settled to need any citation of text-books or adjudged cases. In Ivory v. Kennedy, 13 U. S. App. 279, 6 C. C. A. 365, and 57 Fed. 340, which was a case where Kennedy and wife and Walker and wife had obtained a loan of money on sworn representations that Walter Kennedy and Sarah M. Kennedy, his wife, and John F. Walker and Serena K. Walker, his wife, all lived together as one family on the tract of land known as the “Old Kennedy Homestead,” and that they used and occupied the said 200 acres as their homestead, and that they did not in any wise use or claim any other land as a homestead; and yet thereafter Serena K. Walker, as the wife of John F. Walker, claimed other 200 acres as a homestead, the question was with reference to the form of decree in' connection with a vendor’s lien and claimed homestead rights, and this court said, in discussing that matter:
“Under the circumstances of this case, we are of the opinion that we should follow the precedent set by the supreme court of Texas in a like ease. We are the more inclined to this because it is all that the complainant asks, and because, under the facts, the demand of the defendants for an additional homestead, in view of their representations and affidavit to induce the complainant to part with his money, is inequitable, and tends to operate a fraud upon the complainant; and, while we recognize the public policy of the state of Texas, as declared in its constitution, in favor of the exemption of homesteads from forced sales generally, we do not think that the present is a case calling upon us to invent new precedents, or to stretch the general rules of equity, in order to give the defendants a homestead for which, by the record, they have not paid, and which, under the law, may be, and ought to be, sold to satisfy a just debt.”
In Investment Co. v. Ganzer, 23 U. S. App. 608, 11 C. C. A. 371, and 63 Fed. 647, where a homestead was claimed as against alleged colorable vendor’s lien notes, this court held that, notwithstanding the homestead was involved, the husband and wife were bound by the representations made by them as against bona fide holders of the lien notes.
In Investment Co. v. Burford, 17 C. C. A. 602, 71 Fed. 74, which was a much-considered case, and in many respects similar to the one under consideration, this court unanimously held:
“Under these circumstances, and under the plain provisions of the law, Burford had a right to designate and set apart, out of the tracts of land owned by himself and his wife, the homestead, not exceeding 200 acres, to which the family was entitled under the constitution of the state; and when he did so designate and set apart the homestead openly and aboveboard, with the consent of his wife, and without infringing on the rights of others, he had the full right to deal with the balance of the land as free and clear of all homestead rights, and other parties had the right to deal with him in regard to such land as free and clear of the homestead right This being the case, when we find by the undisputed evidence that, in accordance with the forms prescribed by law, Burford designated the 304 acres of the Inman sur *328 vey, upon which there was a dwelling house (messuage and curtilage) formerly occupied by him and his family as a homestead, as the homestead of the family, and on the faith thereof made a deed of trust of the other surveys owned by him to secure a loan from the Texas Loan Agency, and afterwards a loan from the complainant, we are hound to hold that Burford is now estopped by lawful covenant from claiming, as against the complainant, a homestead other than that so as aforesaid designated, to say nothing of an estoppel in equity by and through the recitals in the trust deed and under the affidavit made by him, and now set forth in the record.”
We do not find the views heretofore expressed by this court in conflict with the general trend and purport of the many decisions of the superior courts of the state of Texas in relation to homesteads and homestead rights, although individual cases may be found declaring an extreme view. Such cases, however, are no more to be reconciled with the general run of decisions of the supreme court of Texas than they are with the decisions of this court.
The charge given by the court in tbe present case is in conflict with the views heretofore expressed by this court and with the law of the case. The second charge which was reguested by the plaintiff below and refused by the court, to wit:
“Yon are instructed to find whether defendant and William Little owned lands other than those in controversy in this suit, in the same vicinity, at the time they made the deed of trust to Elizabeth Harris, and used them, in connection with said lands in controversy, as a homestead; and if you find that they did so own other lands, and that such other lands were designated by them, at the time of making such mortgage or deed of trust, as a homestead; and if you find that defendant and said William Little, in order to procure the loan of money mentioned in said deed of trust, did represent to the J. B. Watkins Land & Mortgage Company that said lands in controversy were not their homestead, and that said loan of three thousand dollars was in' good faith made upon said lands in controversy, without any knowledge that defendant and William Little actually claimed the same as their homestead; and if you further find that defendant and William Little did not actually reside on the tracts of land mortgaged; and if you further find that defendant and William Little so owned as much as two hundred acres of land besides the lands in controversy, including the tract upon which they resided,—then you are instructed that defendant is now estopped from setting up homestead claim to the land in controversy, and in that event yon will find for the plaintiff the land in controversy. You are instructed that the homestead may consist of the tract of land on which the parties may actually reside and other tracts of land not connected with it, including timber lands used as a source of. timber and firewood for the home or farm, and that fencing and cultivating are not necessary to make and constitute such contiguous or timber lands part of the homestead,”
—Appears to be in accord with Ivory v. Kennedy, Investment Co. v. Ganzer, and Investment' Co. v. Burford, supra, and the law of the case.
The judgment of the circuit court is reversed, and the case is remanded, with instructions to grant a new trial, and thereafter proceed in accordance with law, and the views expressed in this opinion.